SCOTT A. OHNEGIAN
sohnegian@riker.com
ROBERT J. SCHOENBERG
rschoenberg@riker.com
WENDI OPPER UZAR
wuzar@riker.com
RIKER DANZIG SCHERER HYLAND PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone:   (973) 451-8551
Facsimile:   (973) 538-1984

MAYER BROWN LLP
DALE GIALI (SBN 150382)
dgiali@mayerbrown.com
(*pro hac vice* motion to be submitted)
350 South Grand Avenue
Los Angeles, California  90071
Telephone:   (213) 229-9500
Facsimile:   (213) 625-0248

ADAM HUDES
(*pro hac vice* motion to be submitted)
ahudes@mayerbrown.com
STEPHEN COHEN
(*pro hac vice* motion to be submitted)
scohen@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000
Facsimile:  (202) 263-3300

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NESTLE USA, INC.,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>PERU FOOD IMPORTS, INC.,<br><br>　　　　　Defendant. | Civil Action No. _____<br><br>COMPLAINT FOR:<br><br>(1)　TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114(1)<br>(2)　FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)<br>(3)　TRADEMARK DILUTION, 15 U.S.C. § 1125(c)<br>(4)　UNLAWFUL IMPORTATION OF GOODS INFRINGING U.S. TRADEMARKS OR NAMES, 15 U.S.C. § 1124 AND 19 U.S.C. § 1526<br>(5)　TRADEMARK INFRINGEMENT AND |



FALSE DESIGNATION OF ORIGIN, N.J. STAT. ANN. § 56:3-13.16
(6) UNFAIR COMPETITION, N.J. STAT. ANN. § 56:4-1
(7) FALSE ADVERTISING AND DECEPTIVE PRACTICES, N.J. STAT. ANN. § 56:8-2
(8) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

JURY TRIAL DEMANDED

Plaintiff Nestlé USA, Inc., by its attorneys, brings this complaint against defendant Peru Food Imports, Inc. ("Peru Food" or "Defendant") as follows:

## NATURE OF ACTION

1.     This action arises from Peru Food's unauthorized distribution and sale in the United States of panetón manufactured by Nestlé Peru, S.A. ("Nestlé Peru") that was intended for sale only in foreign markets.

2.     Panetón is a sweet bread or cake of Italian origin that often contains dried or candied fruits.  Panetón is also a tremendously popular product with the Peruvian community, and has become integrally associated with the celebration of the Christmas holiday in Peru and amongst Americans of Peruvian descent and heritage.  Nestlé Peru manufactures panetón products under Nestlé's D'Onofrio brand.

3.     Plaintiff Nestlé USA, Inc. ("NUSA" or "Plaintiff") sells panetón under the D'Onofrio brand throughout the United States.  NUSA's corporate affiliate, Société des Produits Nestlé S.A. ("SPN"), is the owner of Nestlé's

trademarks in the United States, including D'Onofrio, and NUSA is the exclusive licensee of those trademarks and all of their associated rights.  Accordingly, NUSA is responsible for the marketing, labelling, and distribution of Nestlé products under the D'Onofrio brand in the United States.

4.     NUSA takes that responsibility seriously by ensuring that the contents, packaging, and labelling of all Nestlé products it sells in the United States comply with U.S. laws and regulations; by subjecting its products to rigorous quality control standards; and by providing high-quality post-sale services to its customers.  These activities have ensured continued goodwill for Nestlé trademarks in the United States, which in turn allows NUSA to profit from the sale of Nestlé products to U.S. consumers.  Peru Food is a consummate "free rider," unfairly profiting off of the value of Nestlé's trademarks and the investment that NUSA and its authorized distributors have made in creating consumer demand for Nestlé products.

5.     Peru Food is a New Jersey-based distributor that sells products from Peru to independent retailers in the United States, including D'Onofrio-brand panetón manufactured by Nestlé Peru that is intended for sale *only in foreign markets* (the "Grey Market Panetón").  However, Peru Food is *not* an owner or licensee of Nestlé trademarks in the United States, and NUSA has *not* authorized Peru Food to sell Nestlé-trademarked products.  Trademarked products in a market

that are imported and sold in this manner without consent of the trademark owner are often referred to as "parallel imports" or "grey market goods."

6.      NUSA sells its own version of the Nestlé Peru panetón under the D'Onofrio brand ("NUSA Panetón"), and using the same Nestlé trademark. Despite being sold under the same brand, using the same Nestlé trademark, and having similar appearances, the Grey Market Panetón sold by Peru Food is materially different from the corresponding NUSA Panetón.   While these differences may not matter to Peru Food, they can have serious repercussions for NUSA, retailers, and consumers.

7.      Customers and consumers purchase the Grey Market Panetón without realizing that it is not authorized by NUSA for resale in the United States, it is not properly labeled in compliance with U.S. Food and Drug Administration ("FDA") regulations and guidance, it contains ingredients that are not approved for use in the United States market, and it is not subject to NUSA's rigorous quality control standards for post-sale services.   As a result of Peru Food's actions and the resulting consumer confusion, NUSA and its authorized distributors in the United States have lost retail customers and end-user consumers.   Peru Food's actions have harmed NUSA, its business partners, and its customers.

8.      Accordingly, NUSA brings this action to recover damages due to Peru Food's unlawful distribution and sale of Grey Market Panetón, and to prevent Peru Food's further distribution and sale of this product.   NUSA seeks this relief

through claims arising under the federal Lanham Act and Tariff Act, Title 56 of the New Jersey state statutes, and New Jersey common law.

## THE PARTIES, JURISDICTION, AND VENUE

9.     Plaintiff NUSA is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1812 N. Moore Street in Arlington, Virginia.  NUSA is the exclusive licensee for Nestlé products in the United States, where it is responsible for the marketing and distribution of those products.

10.     Defendant Peru Food is a corporation organized and existing under the laws of the State of New Jersey.  Its registered office is located at 419 71st St., North Bergen, New Jersey; its main business address is P.O. Box 419, West New York, New Jersey; and it also conducts business at, among other locations, 815 Fairview Avenue, #1 in Fairview, New Jersey.  Peru Food describes itself as a distribution company that brings products from Peru to the United States.

11.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and general principles of ancillary and pendent jurisdiction, as well as under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

12.     This Court has personal jurisdiction over Peru Food, and venue is proper, because Peru Food is headquartered in New Jersey, and because a

substantial portion of the acts and omissions giving rise to NUSA's claims and the damages and injuries complained of herein occurred in New Jersey.

## FACTUAL ALLEGATIONS

### *NUSA and NUSA Panetón*

13.   As a major multinational company, Nestlé has operating subsidiaries in many different countries.  In the Americas, those operating subsidiaries include (among others) NUSA and Nestlé Peru.  NUSA and Nestlé Peru are responsible for the marketing, distribution, and sale of Nestlé products in the United States and Peru, respectively.  NUSA sells hundreds of Nestlé food and beverage products (the "NUSA Products") in the United States, including NUSA Panetón.

14.   NUSA devotes a substantial amount of effort and resources to ensure that NUSA Panetón is of the highest quality based on the preferences of United States consumers, is safe to consumers, and complies with U.S. laws and regulations.  Before NUSA Panetón's distribution and sale, NUSA ensures that it fully complies with FDA requirements and as such is properly manufactured, packaged, and labeled to its intended specifications/formulations, and NUSA conducts quality control checks.  After NUSA Panetón is distributed, NUSA continues to monitor the market by receiving consumer inquiries, and if necessary, tracking and investigating complaints, addressing spoilage issues, and performing necessary actions in response to such issues, including by conducting recalls or initiating legal proceedings.

15.     NUSA's sale of panetón in the United States has been tremendously successful because of its efforts to ensure the high quality of this product, as well as its substantial investment in the marketing and promotion of NUSA Panetón.

**_Trademark for NUSA Panetón_**

16.     Each NUSA Product is marketed under a brand name that is subject to a trademark registered at the U.S. Patent and Trademark Office ("USPTO").  The owner of each trademark is SPN, which has entered into an agreement with NUSA granting NUSA an exclusive license to the rights associated with each trademark in the United States, including the right to enforce the trademark in the United States.

17.     The trademark owned by SPN and registered with the USPTO that is relevant here is "D'Onofrio" (the "Nestlé Mark").  Since at least 1985, NUSA or its predecessor in interest has continuously used the Nestlé Mark on NUSA Products, including panetón.  The Nestlé Mark is registered at the USPTO under registration number 3470646.

**_Peru Food's Wrongful Distribution and Sale of Nestlé Peru Products in the United States_**

18.     Defendant Peru Food was formed in 2000, in New Jersey.  Its registered office is in North Bergen, New Jersey; it main business address is in West New York, New Jersey; and it also conducts business in, among other locations, Fairview, New Jersey.   Peru Food describes itself as being an

"international company in the food industry" and a "distribution company" with "modern plants located in Lima Peru."[1]

19.     Among the food and beverages that Peru Food sells are D'Onofrio-brand panetón manufactured by Nestlé Peru.

20.     Neither NUSA nor SPN have authorized Peru Food to distribute or sell Nestlé products in the United States.  NUSA and SPN also have not authorized Peru Food to use the Nestlé Mark in the United States in any manner.

21.     Nevertheless, Peru Food is in the business of acquiring D'Onofrio-brand panetón products manufactured by Nestlé Peru and distributing and selling them to retailers and other customers in the United States.

22.     As explained further below, the Grey Market Panetón distributed in the United States by Peru Food is materially different from the corresponding NUSA product marketed under the same brand.

### Material Differences Between NUSA Panetón and Grey Market Panetón Sold by Peru Food

23.     The Grey Market Panetón sold by Peru Food uses the same Nestlé Mark that appears on the NUSA Panetón.  For example:

//

//

---

[1] *See* http://www.perufoodimport.com/?lng=en&  (website of Defendant Peru Food, accessed October 15, 2019).



| NUSA Product | Nestlé Peru Product |
|:---:|:---:|
| | D'Onofrio Panetón |
| D'Onofrio Panetón | |

24.     Despite their use of the same Nestlé Mark and similarities in appearance, there are material differences between the NUSA Panetón and the Grey Market Panetón concerning, among other things, product composition/formulation, the information contained on the labels, and post-sale services for the products.

Product Composition and Formulation

25.     The product compositions and formulation of the NUSA Panetón and Grey Market Panetón are different.  For example, the NUSA and Nestlé Peru versions of D'Onofrio-brand panetón have different fat and sugar content:

|  | Content Per Serving | |
|---|---|---|
|  | NUSA | Nestlé Peru |
| Fat Content | 13g | 10.5g |
| Sugar Content | 19g | 15.8g |

26.     Moreover, Grey Market Panetón uses extract chlorophyll as a color additive that is not included in the NUSA Panetón.

| **NUSA Product** | **Nestlé Peru Product** |
|---|---|
| D'Onofrio Panetón | D'Onofrio Panetón (includes chlorophyll) |



27.     Chlorophyll is not approved for use as a color additive in food under FDA's color additive regulations.  *See* 21 C.F.R. Parts 73 and 74.  Accordingly, the Grey Market Panetón is adulterated under the Federal Food, Drug, and Cosmetic Act ("FFDCA").  *See* 21 U.S.C. § 342(c).

28.     Importation of an adulterated food product is a prohibited act under the FFDCA.  *See* 21 U.S.C. § 331(a).  Peru Food's unauthorized importation of Grey Market Panetón therefore violates the FFDCA, jeopardizing NUSA's goodwill and brand equity.

Labels

29.     The Grey Market Panetón contains information only in Spanish, whereas the labels for NUSA Panetón use both English and Spanish.  For example:

| NUSA Product | Nestlé Peru Product |
|---|---|
| D'Onofrio Panetón | D'Onofrio Panetón |
|  |  |

30.     This Spanish-language-only labelling of the Grey Market Panetón does not comply with FDA regulations, which require that if the label makes any representation in a foreign language, all required labeling statements must appear in both English and that foreign language.  *See* 21 C.F.R. § 101.15(c)(2).

31.     The label for the Grey Market Panetón does not refer to a website affiliated with Nestlé Peru or any other Nestlé entity, whereas the corresponding label for NUSA Panetón refers to a website affiliated with NUSA, nestleusa.com. Likewise, the label for the Grey Market Panetón does not provide a customer service line affiliated with Nestlé Peru or any other Nestlé entity, whereas the corresponding label for the NUSA Panetón provides a customer service line affiliated with NUSA, 1-800-258-6727.

32.     The Nutrition Facts Panel on the label for NUSA Panetón complies with FDA regulations, which specify certain formatting for font sizes, bolding, spacing, and lines between text, as well as naming and order of nutrients listed. *See* 21 C.F.R. §§ 101.9(c), (d).   The NUSA Panetón also complies with FDA regulations by providing serving sizes in appropriate units.  *See* 21 CFR 101.9(b). Further, consistent with new FDA nutrition labeling regulations that go into effect on January 1, 2020, the NUSA Panetón label specifically identifies the added sugar content of the products and lists calories in a designated larger font.

33.     However, the Nutrition Facts Panel for the Grey Market Panetón is different in appearance and content from the Nutrition Facts Panel on the label for

NUSA Panetón.  The Grey Market Panetón nutritional information lacks the font sizes, bolding, spacing, and lines between text mandated by FDA regulations. Further, the Grey Market Panetón does not identify its added sugar content or list calories in a designated larger font.

34.    The serving sizes and corresponding nutritional information is also different for each product.  For instance, the NUSA Panetón and the Grey Market Panetón list different nutritional values per serving for calories, total fat, cholesterol, sodium, and total carbohydrates.    Moreover, certain nutritional information on the Nutrition Facts Panel for the NUSA Panetón—such as potassium and vitamin D content—is not found anywhere on the Nutrition Facts Panel for the Grey Market Panetón.

| NUSA Product | Nestlé Peru Product |
|---|---|
| D'Onofrio Panetón | D'Onofrio Panetón |
|  |  |

<u>Other Material Differences</u>

35.    Beyond differences in their labelling and formulations, there are a number of additional material differences between the NUSA Panetón and the Grey Market Panetón sold by Peru Food.

36.    For example, before NUSA Panetón is distributed and sold in the United States, it is subject to stringent food safety and quality assurance processes to ensure that it meets the requirements of U.S. laws and regulations.  Nestlé Peru manufactures D'Onofrio-brand panetón subject to Peru's food safety and quality standards.  In addition, in the event of a quality issue or a product recall involving the Grey Market Paneton, it may be difficult to trace the products and their ingredients to determine the source of the issue.

37.    NUSA also offers a number of post-sale services for NUSA products, including NUSA Panetón, such as returns, spoils allowances, "scan-backs," and customer service.  These services result in a different experience for retailers and consumers of NUSA Panetón compared to retailers and consumers of Grey Market Panetón distributed by Peru Food:

        (a)    <u>Returns</u>: NUSA allows returns of certain NUSA products if retailers and/or customers are dissatisfied with those NUSA products.  However, because NUSA never distributed the Grey Market Panetón diverted by Peru Food, retailers and customers who purchased those

products will not be able to return them to NUSA, potentially damaging the customer perception of NUSA and the Nestlé Mark.

(b) <u>Spoils Allowances and "Scan-Backs"</u>: NUSA provides certain credits to retailers for NUSA products that have been spoiled or damaged, and for NUSA products that have been sold at a discounted price. These credits help prevent retailers from losing money on products that are damaged or spoiled, or that remain unsold. They also encourage retailers to remove spoiled and/or damaged products from their shelves, and to offer lower prices for NUSA products. However, NUSA cannot provide credits for Grey Market Panetón because NUSA did not provide those Nestlé Peru products to retailers in the first instance.

(c) <u>Customer Service</u>: Retailers and consumers who have purchased NUSA products may contact NUSA's customer service staff in the United States to address any concerns that they have about their NUSA products, and NUSA's customer service staff can address those concerns. However, NUSA's customer service staff cannot address concerns that retailers and consumers raise about Grey Market Panetón that they have purchased, as NUSA had no involvement in the Nestlé Peru products' manufacture, labelling, distribution, or sale.

38. By providing these post-sale services for NUSA Panetón, NUSA builds goodwill for itself, NUSA Panetón, and the Nestlé Mark in the United

States.   However, U.S. purchasers of Grey Market Panetón do not enjoy those services, thereby diminishing the goodwill of the Nestlé Mark.

***Peru Food's Use of Stickers on Grey Market Panetón***

39.    Peru Food has distributed and/or sold Grey Market Panetón that includes unauthorized stickers on top of the original product labels.   For example, the D'Onofrio panetón products being sold through retailers for whom Peru Food is a distributor include stickers on both the front and the bottom of the product:

| Sticker Applied to Front of Grey Market Panetón |
| :---: |
|  |

**Sticker Applied to Bottom of Grey Market Panetón**



40.    The stickers that appear on this product provide nutritional and ingredients information intended to create the impression that retailers and/or consumers are purchasing NUSA Panetón and/or that the Grey Market Panetón complies with U.S. labeling requirements.  However, the stickers are insufficient to bring the Grey Market Panetón into compliance with U.S. regulations.

41.    The stickered D'Onofrio panetón sold by Peru Food fails to comply with the FDA's regulations because its Nutrition Facts Panel does not meet the necessary format and content requirements.  For example, the Nutrition Facts Panel does not have the appropriate hairline placement between lines of text (*see* 21 C.F.R. § 101.9(d)), and its font sizes and bolding do not comply with FDA regulations (*see* 21 C.F.R. § 101.9(c)).

42.   By selling products with stickers that fail to comply with the FDA's labeling requirements, Peru Food undermines the FDA's efforts to ensure that consumers make informed food choices, to facilitate price comparisons, and to prevent fraud upon consumers.   Peru Food's failure to comply with federal regulations also undermines goodwill for NUSA, its products, and the Nestlé Mark throughout the United States.

### Effects of Peru Food's Wrongful Conduct on NUSA and Its Customers

43.   Retailers and consumers have purchased Grey Market Panetón distributed by Peru Food under the mistaken belief that it is NUSA Panetón, and/or that the distribution and sale of this product is associated with NUSA.  As a result, those retailers and consumers have purchased materially different products from the ones they believed they were purchasing—products that lack the required label statements, product formulation, quality control, food safety compliance, and post-sale services that they were expecting. This consumer confusion and resulting damage to NUSA and the goodwill associated with the Nestlé Mark is likely to continue if Peru Food's infringing activities are not stopped.  This has harmed and continues to harm NUSA's goodwill and reputation, and the goodwill associated with the Nestlé Mark in the United States, resulting in enormous harm and damages to NUSA.

44.   Further, by circumventing legitimate distribution channels and quality control procedures, and by failing to provide the services that NUSA and its

legitimate distributors provide to retailers and customers, Peru Food has been able to offer artificially low prices for Grey Market Panetón. As a result, some retailers and consumers have purchased Grey Market Panetón imported by Peru Food, rather than NUSA Panetón intended for distribution and sale in the United States, resulting in substantial losses to NUSA and its authorized distributors and disruptions to NUSA's business relationships with its customers. This confusion among retailers and consumers and resulting damage to NUSA and the goodwill associated with the Nestlé Mark is likely to continue if Peru Food's infringing activities are not stopped.

45. Peru Food has engaged in this unlawful conduct despite knowing that it is infringing upon NUSA's rights to the Nestlé Mark in the United States.

## FIRST CAUSE OF ACTION
### Trademark Infringement, 15 U.S.C. § 1114(1)

46. NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 45 above as if fully set forth herein.

47. NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Mark in the United States and has the exclusive right to use the Nestlé Mark in the United States in connection with D'Onofrio-brand panetón.

48. In the United States, NUSA or its predecessors have used the Nestlé Mark continuously for decades to identify their D'Onofrio-brand panetón and distinguish it from panetón made and sold by others by, among other things,

prominently displaying the Nestlé Mark on NUSA Panetón and its packaging and marketing materials.

49.     Defendant has infringed NUSA's rights to the Nestlé Mark in interstate commerce by various acts, including advertising, distributing, and offering for sale panetón bearing the Nestlé Mark which was manufactured solely for foreign markets, and was not manufactured by NUSA for sale in the United States under the Nestlé Mark.

50.     Defendant's acts of infringement are likely to cause, and have caused, confusion, mistake, and deception, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendant's products, or that Defendant is associated with or related to NUSA or is authorized by NUSA to distribute or sell D'Onofrio-branded panetón in the United States.

51.     Defendant's acts of infringement have been committed deliberately and willfully, with knowledge of NUSA's exclusive rights and goodwill in the Nestlé Mark, and with knowledge of the infringing nature of the marks when used in connection with the diverted Grey Market Panetón.  Defendant's acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive.

52.     Defendant had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Mark prior to Defendant's adoption and use of the

Nestlé Mark, and Defendant continues to use the Nestlé Mark with actual knowledge of infringing conduct.

53.   NUSA has not consented to Defendant's use of the Nestlé Mark for any purpose, and NUSA has not consented to the sale of the Grey Market Panetón bearing the Nestlé Mark in the United States market.

54.   By reason of Defendant's wrongful acts of infringement, NUSA has suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Mark in the United States, and a loss of sales and/or market share, among other reasons.

55.   Further, by reason of Defendant's wrongful acts of infringement, NUSA has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Nestlé Mark, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

56.   If not restrained, Defendant will have unfairly derived and will continue to derive income, profits, gain and business opportunities as a result of its acts of infringement.

57.   By reason of the foregoing, NUSA is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the infringing Grey Market Panetón to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, treble damages,

disgorgement of Defendant's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## SECOND CAUSE OF ACTION
### False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)

58.     NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 57 above as if fully set forth herein.

59.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Mark in the United States and has the exclusive right to use the Nestlé Mark in the United States in connection with D'Onofrio panetón.

60.     Defendant has, without authorization, imported, distributed, and sold in the United States unauthorized or diverted Grey Market Panetón featuring the Nestlé Mark, which is materially different from NUSA Panetón authorized for U.S. sale by NUSA.

61.     Defendant's acts of false designation of origin and unfair competition are likely to cause, and have caused, confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with NUSA, and as to the origin, sponsorship, and/or approval of Defendant's goods, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendant's products, or that Defendant is associated with or related to NUSA or are authorized by NUSA to distribute or sell D'Onofrio panetón products in the United States.

62.     Defendant's acts of false designation of origin and unfair competition have been committed deliberately and willfully, with knowledge of NUSA's exclusive rights and goodwill in the Nestlé Mark, and with knowledge of the infringing nature of the marks when used in connection with the diverted Grey Market Panetón.  Defendant's acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive.

63.     Defendant had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Mark prior to Defendant's adoption and use of the Nestlé Mark, and Defendant continues to use the Nestlé Mark with actual knowledge of infringing conduct.

64.     NUSA has not consented to Defendant's use of the Nestlé Mark for any purpose, and NUSA has not consented to the sale of the Grey Market Panetón bearing the Nestlé Mark in the United States market.

65.     By reason of Defendant's wrongful acts of unfair competition, NUSA has suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Mark in the United States, and a loss of sales and/or market share, among other reasons.

66.     Further, by reason of Defendant's wrongful acts of unfair competition, NUSA has suffered and will continue to suffer substantial and irreparable injury,

loss, and damage to its rights in and to the Nestlé Mark, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

67.   If not restrained, Defendant will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of its acts of unfair competition.

68.   By reason of the foregoing, NUSA is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the infringing Grey Market Panetón to be destroyed pursuant to 15 U.S.C. § 1118, and to actual damages, treble damages, disgorgement of Defendant's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

### THIRD CAUSE OF ACTION
**Trademark Dilution, 15 U.S.C. § 1125(c)**

69.   NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 68 above as if fully set forth herein.

70.   NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Mark in the United States and has the exclusive right to use the Nestlé Mark in the United States in connection with D'Onofrio panetón.

71.   The Nestlé Mark is famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

72.    The Nestlé Mark is widely recognized by the general consuming public of the United States as a designation of source of NUSA's goods, including NUSA Panetón.

73.    The Nestlé Mark became a famous source indicator for NUSA Panetón long before Defendant commenced its infringing activities.

74.    Defendant's acts have diluted the Nestlé Mark in the United States by blurring its association with the NUSA Panetón and reducing purchasers' ability to identify and distinguish goods intended for different markets.  In addition, Defendant's distribution and sale of goods intended for foreign markets (which may have different formulations, label information, and/or post-sale services than consumers expect) in the United States and Defendant's placement of unauthorized stickers in a manner that fails to comply with relevant regulations have diluted the Nestlé Mark by tarnishment.

75.    Defendant had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Mark prior to Defendant's adoption and use of the Nestlé Mark, and Defendant continues to use the Nestlé Mark with actual knowledge of infringing conduct.

76.    NUSA has not consented to Defendant's use of the Nestlé Mark for any purpose, and NUSA has not consented to the sale of the Grey Market Panetón bearing the Nestlé Mark in the United States market.

77.    Defendant's acts have irreparably damaged NUSA and will continue to do so unless restrained by this Court.  Therefore, NUSA is without an adequate remedy at law and is entitled to, among other relief, an order enjoining and restraining Defendant from diverting, distributing, and selling Grey Market Panetón in the United States.

## FOURTH CAUSE OF ACTION
**Unlawful Importation of Goods Infringing U.S. Trademarks or Names,
15 U.S.C. § 1124 and 19 U.S.C. § 1526**

78.    NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 77 above as if fully set forth herein.

79.    In the United States, NUSA is the exclusive licensee of the Nestlé Mark, which is registered with the USPTO.  Defendant imported the Grey Market Panetón, which bear the Nestlé Mark, into the United States without the permission of NUSA.

80.    By reason of Defendant's wrongful importing of the Grey Market Panetón that is materially different from the NUSA Panetón, NUSA has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Nestlé Mark, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

81.    By reason of the foregoing, NUSA is entitled to, among other relief, an order enjoining and restraining Defendant from diverting, distributing, and selling the Grey Market Panetón in the United States, and/or seizure of the Grey

Market Panetón and/or requiring Defendant to destroy the Grey Market Panetón in its possession, as well as actual damages, treble damages, disgorgement of Defendant's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

**FIFTH CAUSE OF ACTION**
**Trademark Infringement and False Designation of Origin**
**N.J. Stat. Ann. § 56:3-13.16**

82.     NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 81 above as if fully set forth herein.

83.     Defendant's acts of infringement and false designation of origin are likely to cause, and have caused, confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with NUSA, and as to the origin, sponsorship, and/or approval of Defendant's goods, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendant's products, or that Defendant is associated with or related to NUSA or is authorized by NUSA to distribute or sell D'Onofrio panetón products in the United States.

84.     Defendant's acts of infringement and false designation of origin have been committed deliberately and willfully, with knowledge of NUSA's exclusive rights and goodwill in the Nestlé Mark, and with knowledge of the infringing nature of the mark when used in connection with the diverted Grey Market

Panetón.  Defendant's acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive.

85.    Defendant had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Mark prior to Defendant's adoption and use of the Nestlé Mark, and Defendant continues to use the Nestlé Mark with actual knowledge of infringing conduct.

86.    NUSA has not consented to Defendant's use of the Nestlé Mark for any purpose, and NUSA has not consented to the sale of the Grey Market Panetón bearing the Nestlé Mark in the United States market.

87.    By reason of Defendant's wrongful acts of infringement and false designation of origin, NUSA has suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Mark in the United States, and a loss of sales and/or market share, among other reasons.

88.    Further, by reason of Defendant's wrongful acts of infringement and false designation of origin, NUSA has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Nestlé Mark, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

89.     If not restrained, Defendant will have unfairly derived and will continue to derive income, profits, gain and business opportunities as a result of its acts of infringement.

90.     By reason of the foregoing, NUSA is entitled to injunctive relief, disgorgement of profits, the destruction of all infringing Grey Market Panetón, treble damages, the costs of this action, attorneys' fees, prejudgment interest, and other remedies pursuant to N.J. Stat. Ann. § 56:3-13:16.

### SIXTH CAUSE OF ACTION
**Unfair Competition, N.J. Stat. Ann. § 56:4-1**

91.     NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 90 above as if fully set forth herein.

92.     Defendant has failed to comply with N.J. Stat. Ann. § 56:4-1, which prohibits a corporation from appropriating for its own use the names, brands, trademarks, reputation, and/or goodwill of a manufacturer in whose product that corporation deals.

93.     Defendant's acts of unfair competition are likely to cause, and have caused, confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with NUSA, and as to the origin, sponsorship, and/or approval of Defendant's goods, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendant's

products, or that Defendant is associated with or related to NUSA or is authorized by NUSA to distribute or sell D'Onofrio panetón products in the United States.

94.    Defendant's acts of unfair competition have been committed deliberately and willfully, with knowledge of NUSA's exclusive rights and goodwill in the Nestlé Mark, and with knowledge of the infringing nature of the mark when used in connection with the diverted Grey Market Panetón. Defendant's acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive.

95.    Defendant had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Mark prior to Defendant's adoption and use of the Nestlé Mark, and Defendant continues to use the Nestlé Mark with actual knowledge of infringing conduct.

96.    NUSA has not consented to Defendant's use of the Nestlé Mark for any purpose, and NUSA has not consented to the sale of the Grey Market Panetón bearing the Nestlé Mark in the United States market.

97.    By reason of Defendant's wrongful acts of unfair competition, NUSA has suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Mark in the United States, and a loss of sales and/or market share, among other reasons.

98.   Further, by reason of Defendant's wrongful acts of unfair competition, NUSA has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Nestlé Mark, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

99.   If not restrained, Defendant will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of its acts of unfair competition.

100.   By reason of the foregoing, NUSA is entitled to injunctive relief, damages, treble damages, and other relief pursuant to N.J. Stat. Ann. § 56:4-2.

## SEVENTH CAUSE OF ACTION
### False Advertising and Deceptive Practices, N.J. Stat. Ann. § 56:8-2

101.   NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 100 above as if fully set forth herein.

102.   The Grey Market Panetón advertised, offered for sale, and sold by Defendant comprises merchandise within the meaning of N.J. Stat. Ann. § 56:8-1(c).

103.   In advertising, offering for sale, and selling the Grey Market Panetón, Defendant has engaged in the use of deception, misrepresentations, and/or knowing omissions of material fact by failing to disclose that the Grey Market Panetón is not sold by and/or affiliated with NUSA, that the Grey Market Panetón includes a food additive that is not approved by the FDA and thereby violates

federal law, and that the Grey Market Panetón otherwise is materially different from the NUSA Panetón.

104.  Each deception, misrepresentation, and/or knowing omission of material fact by Defendant constitutes a violation of N.J. Stat. Ann. § 56:8-2.

## EIGHTH CAUSE OF ACTION
### Tortious Interference with Prospective Economic Advantage

105.  NUSA incorporates and realleges each and every allegation set forth in paragraphs 1 to 104 above as if fully set forth herein.

106.  NUSA had existing economic relationships with each of its existing and prospective customers.  Each of those relationships benefited NUSA economically and likely would have continued to benefit NUSA economically in the future.

107.  Defendant was aware of NUSA's economic relationships with its existing and prospective customers by virtue of its direct contact with those existing and prospective customers, as well as its familiarity with the business of distributing and selling food and beverage products in the United States.

108.  Defendant intentionally interfered with those economic relationships, and/or knew that the disruption of such relationships was certain or substantially certain to occur, when it wrongfully used the Nestlé Mark and distributed and sold Grey Market Panetón in the United States without the permission of NUSA.

NUSA's relationships with its customers were disrupted, resulting in harm to NUSA, and Defendant's conduct was a substantial factor in causing that harm.

109.  As a result of Defendant's tortious interference with NUSA's economic relationships, NUSA is entitled to, among other relief, damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff NUSA prays for judgment against Defendant as follows:

1.      Preliminary and permanent injunctive relief against Defendant and its officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with it, from doing any of the following acts, either directly or indirectly:

(a)      Acquiring, transporting, distributing, developing, offering to sell, or selling any products bearing the Nestlé Mark;

(b)      Using the Nestlé Mark or any other trademark owned by SPN and/or licensed to NUSA in connection with its business;

(c)      Otherwise infringing the Nestlé Mark or any other trademark owned by SPN and/or licensed to NUSA;

(d)      Causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of the NUSA Panetón or any other

products manufactured, distributed, or sold by NUSA and/or that bears the Nestlé Mark;

(e)   Using any false designation of origin or false representation concerning NUSA Panetón or any other products manufactured, distributed, or sold by NUSA and/or that bear the Nestlé Mark; and

(f)   Any acts of unfair competition or unfair practice affecting NUSA, the NUSA Panetón, or any other products manufactured, distributed, or sold by NUSA and/or that bear the Nestlé Mark;

2.   For an order directing Defendant to file with this Court and serve on NUSA within 30 days after service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

3.   For an order to destroy the Grey Market Panetón or any other products bearing the Nestlé Mark in the possession of Defendant and its officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with it;

4.   For an order seizing the Grey Market Panetón or any other products bearing the Nestlé Mark in the possession of Defendant and its

officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with it;

5.   For an accounting and disgorgement of all of Defendant's profits resulting from its sale of Grey Market Panetón and any other products bearing a Nestlé Mark in the United States;

6.   For an order awarding NUSA damages in an amount to be determined, as well as treble damages, prejudgment and postjudgment interest on its damages award, punitive damages, and NUSA's reasonable attorneys' fees and costs of suit;

7.   Such other and further relief as the Court may deem proper.

Dated:     October 17, 2019                    RIKER DANZIG SCHERER HYLAND
                                                                      PERRETTI LLP

                                                                      By: : s/ Scott A. Ohnegian
                                                                            SCOTT A. OHNEGIAN
                                                                            sohnegian@riker.com
                                                                            ROBERT J. SCHOENBERG
                                                                            rschoenberg@riker.com
                                                                            WENDI OPPER UZAR
                                                                            wuzar@riker.com
                                                                            Headquarters Plaza
                                                                            One Speedwell Avenue
                                                                            Morristown, New Jersey 07962
                                                                            Telephone:     (973) 451-8551
                                                                            Facsimile:      (973) 538-1984

                                                                            MAYER BROWN LLP
                                                                            DALE GIALI (SBN 150382)
                                                                            (*pro hac vice* motion to be submitted)
                                                                            dgiali@mayerbrown.com
                                                                            350 South Grand Avenue
                                                                            Los Angeles, California  90071
                                                                            Telephone:     (213) 229-9500
                                                                            Facsimile:      (213) 625-0248

                                                                            ADAM HUDES
                                                                            (*pro hac vice* motion to be submitted)
                                                                            ahudes@mayerbrown.com

                                                                            STEPHEN COHEN
                                                                            (*pro hac vice* motion to be submitted)
                                                                            scohen@mayerbrown.com
                                                                            1999 K Street, N.W.
                                                                            Washington, D.C. 20006
                                                                            Telephone:     (202) 263-3000
                                                                            Facsimile:      (202) 263-3300

                                                                            Attorneys for Plaintiff Nestlé USA, Inc.

## **DEMAND FOR JURY TRIAL**

Plaintiff NUSA demands a trial by jury of all issues so triable.

Dated: October 17, 2019   RIKER DANZIG SCHERER

HYLAND PERRETTI LLP
Dated: October 17, 2019
 RIKER DANZIG SCHERER
HYLAND PERRETTI LLP

By: : s/ Scott A. Ohnegian
SCOTT A. OHNEGIAN
sohnegian@riker.com
ROBERT J. SCHOENBERG
rschoenberg@riker.com
WENDI OPPER UZAR
wuzar@riker.com
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
Telephone: (973) 451-8551
Facsimile: (973) 538-1984

MAYER BROWN LLP
DALE GIALI (SBN 150382)
(pro hac vice motion to be submitted)
dgiali@mayerbrown.com
350 South Grand Avenue
Los Angeles, California  90071
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

ADAM HUDES
(pro hac vice motion to be submitted)
ahudes@mayerbrown.com

STEPHEN COHEN
(pro hac vice motion to be submitted)
scohen@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Attorneys for Plaintiff Nestlé USA, Inc.
By: : s/ Scott A. Ohnegian
SCOTT A. OHNEGIAN

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to Local Civil Rule 11.2, I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending action in any court, or of any pending arbitration or administrative proceeding.

Dated:    October 17, 2019                RIKER DANZIG SCHERER HYLAND
                                          PERRETTI LLP

                                          By: : s/ Scott A. Ohnegian
                                              SCOTT A. OHNEGIAN
                                              sohnegian@riker.com
                                              ROBERT J. SCHOENBERG
                                              rschoenberg@riker.com
                                              WENDI OPPER UZAR
                                              wuzar@riker.com
                                              Headquarters Plaza
                                              One Speedwell Avenue
                                              Morristown, New Jersey 07962
                                              Telephone:    (973) 451-8551
                                              Facsimile:    (973) 538-1984

                                              MAYER BROWN LLP
                                              DALE GIALI (SBN 150382)
                                              (*pro hac vice* motion to be submitted)
                                              dgiali@mayerbrown.com
                                              350 South Grand Avenue
                                              Los Angeles, California  90071
                                              Telephone:    (213) 229-9500
                                              Facsimile:    (213) 625-0248

                                              ADAM HUDES
                                              (*pro hac vice* motion to be submitted)
                                              ahudes@mayerbrown.com

                                              STEPHEN COHEN
                                              (*pro hac vice* motion to be submitted)
                                              scohen@mayerbrown.com
                                              1999 K Street, N.W.
                                              Washington, D.C. 20006
                                              Telephone:    (202) 263-3000
                                              Facsimile:    (202) 263-3300

                                              Attorneys for Plaintiff Nestlé USA, Inc.